# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-211V
UNPUBLISHED

| | |
|---|---|
| TRINA LOWER,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: December 8, 2023<br><br>Special Processing Unit (SPU); Entitlement to Compensation; Ruling on the Record; Findings of Fact; Influenza ("Flu"); Shoulder Injury Related to Vaccine Administration (SIRVA); |

*Leigh Finfer*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Debra A. Filteau Begley*, U.S. Department of Justice, Washington, DC, for Respondent.

## RULING ON ENTITLEMENT[1]

On February 26, 2020, Trina Lower filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on November 18, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons set forth below, I find that Petitioner is entitled to compensation.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.     Relevant Procedural History

During the claim's life, some effort was made at settlement, but the parties could not find agreement. Accordingly, Petitioner was ordered to file a motion for a ruling on the record, doing so on August 15, 2022. Motion for Ruling on the Record ("Mot."), ECF No. 56. Respondent filed a response on December 1, 2022. Respondent's Rule 4(c) Report and Response to Petitioner's Motion for a Ruling on the Record ("Opp."), ECF No. 60. The matter is ripe for resolution.

## II.    Petitioner's Medical Records

Petitioner received a flu vaccine in her left shoulder on November 18, 2017, at her place of employment. Ex. 1 at 1. A little over three weeks later, she reported left shoulder pain to her primary care physician, Dr. Steven Tekippe, on December 11, 2018. Ex. 3 at 15. She associated the pain with the vaccination, and an examination revealed reduced range of motion. *Id.* A cortisone injection was administered. *Id.*

On January 24, 2018, Petitioner returned to Dr. Tekippe, now reporting that she was pursuing a workers' compensation claim due to her left shoulder injury "stemming from" the November 18 flu vaccine. Ex. 3 at 13. She also reported that the steroid injection helped, but her pain was returning. A second steroid injection was administered. *Id.*

Petitioner next sought care on April 27, 2018, informing Dr. Tekippe that she had experienced "moderate improvement" since the last steroid injection, but still was feeling some pain. Ex. 3 at 11. She was assessed with bursitis, and a third injection was administered. *Id.* at 11.

On June 27, 2018, Petitioner returned to Dr. Tekippe with reports of ongoing left shoulder pain she attributed to a flu vaccine. Ex. 3 at 8. She also reported right shoulder pain that could be the result of compensating for the left shoulder injury. *Id.* She was diagnosed with arthralgia of the left shoulder region and pain in the left shoulder. *Id.* Petitioner had an MRI on June 28, 2018, which showed impingement and minimal tendinopathy. Ex. 17 at 53.

Petitioner began occupational therapy on December 18, 2018. Ex. 17 at 29. At the initial meeting, Petitioner reported that her symptoms "started after she received a flu shot last year in the left shoulder." *Id.* Further, she stated that cortisone injections gave her "about 2 to 3 months" of relief. *Id.* She attended eleven sessions and was discharged on February 1, 2019, after making "excellent gains". *Id.* at 28, 43.

On May 3, 2019, Petitioner returned to Dr. Tekippe with complaints of left shoulder pain she attributed to "an injury…stemming from an injection for influenza." Ex. 3 at 6. She was assessed with bursitis and received another cortisone injection. *Id.* at 6-7. On November 20, 2019, Petitioner again complained of shoulder pain "related to previous injection for flu immunization" and received another steroid injection. Ex. 6 at 9.

Petitioner submitted an affidavit in support of her claim. Ex. 7. Therein, she states that she received a flu vaccine on October 26, 2018, and suffered the residual effects of her injury for mor than six months.

### III. Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

### 1. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion, and I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms.

### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The medical records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first reported shoulder pain twenty-three days after her November 18, 2018, vaccination, and associated her shoulder pain with the earlier vaccination. Ex. 3 at 15. Thereafter, Petitioner continued to link her shoulder pain temporally to the flu vaccine. *See* Ex. 3 at 13 (record from January 24, 2018, stating that Petitioner's shoulder injury "stem[ed] from" the flu vaccination); Ex. 3 at 8 (record from June 27, 2018, reporting ongoing shoulder pain Petitioner attributed to the flu vaccine); Ex. 17 at 29 (record from December 18, 2018, stating that Petitioner's symptoms "started after she received a flu shot last year in the left shoulder").

Respondent argues that Petitioner's statements are vague, failing to identify a specific onset date for her shoulder symptoms. Opp. at 6-7. Even so, a finding of Table-consistent onset can be made based on such a record. Program petitioners are not required to marshal records setting forth with chronographic specificity the precise day and hour that their onset manifested. As noted above, Petitioner consistently linked her shoulder pain to the November 18, 2018, flu vaccine – whereas there are no records suggesting an onset outside of 48-hours post-vaccination.

Further, the relevant medical records show that Petitioner reported shoulder pain in a relatively timely manner in comparison to the date of vaccination Thus, Petitioner first began to complain of shoulder pain within approximately three weeks of the vaccine, and did not attribute her pain to any other injury or cause. It is common for SIRVA petitioners to delay seeking treatment, thinking the injury will resolve on its own, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain for a period of time after. And individuals also often misconstrue the nature of their injury, and therefore fail to inform treaters of all specific facts relevant to onset until later. Here, the added detail of onset did not "wait" for months before being

provided, but began to be reported in a reasonable time post-vaccination. And Petitioner affirmatively and repeatedly linked her shoulder pain to the flu vaccine.

Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### 3. Petitioner's Pain was Limited to her Left Shoulder

Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest otherwise.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on November 18, 2018, in the United States. Ex. 1 at 1; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 7; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

### Conclusion

**In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.**

**Accordingly, the parties shall file a Joint Status Report by <u>January 4, 2024</u>, indicating whether a brief attempt at settlement discussions would be productive.**

**IT IS SO ORDERED.**

<u>/s/ Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master